# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RHONDA L. MAYS,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-647
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's revised statement of errors (Doc. 16), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

## I. Procedural Background

Plaintiff filed her current applications for DIB and SSI in January 2012, alleging disability since July 29, 2011,[1] due to fibromyalgia, deteriorating discs, rheumatism, osteoarthritis in more than one place, depression, post follow-up care from lumpectomy from breast cancer, and lost strength in right hand after carpal tunnel surgery. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Monica LaPolt. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 30, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by

---

[1] Plaintiff initially applied for DIB and SSI on September 18, 2008. Her applications were denied on October 24, 2008. (Tr. 57-58, 65-72). It does not appear that plaintiff appealed that decision.

the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four

steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since July 29, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: fibromyalgia and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs.   She can never climb ladders, ropes, or scaffolds.   She must avoid slippery or uneven surfaces.   The [plaintiff] has the mental capacity to understand, remember, and follow simple instructions.   Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, the [plaintiff] is able to sustain the attention and concentration skills sufficient to

carry out work-like tasks with reasonable pace and persistence. The [plaintiff] must avoid more than occasional transactional interaction with the public.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 29, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-20).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff's past relevant work was as a fast food worker, a light, unskilled position; a fast food crew chief/cook, a medium, skilled position; and a dental assistant, a light, skilled position. (Tr. 18, 32-35, 50-51).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as small parts assembler (2,600 jobs in the state and 87,000 jobs nationally), electronics worker (1,000 jobs in the state and 38,000 jobs nationally), and shipping and receiving weigher (1,800 jobs locally and 76,000 jobs nationally). (Tr. 19-20, 53-54).

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ's RFC did not account for the moderate limitations in concentration, persistence, or pace that the ALJ found in Step Three of the sequential evaluation process; (2) the ALJ erred at Step Two because he found that plaintiff's depression was nonsevere; (3) the ALJ failed to properly weigh the medical source opinions of

5

consultative examiners Jillian Yee, Psy.D., and Kurt Jacobs, D.O., and social worker Carolyn Childress, M.S.W.; and (4) the ALJ should have deferred to plaintiff's statements of her activities to find her fibromyalgia disabling.   (Docs. 16 and 18).

     **1.  Whether the ALJ failed to adequately account for plaintiff's moderate impairment in maintaining concentration, persistence, or pace.**

     The ALJ determined that plaintiff suffered from a moderate impairment in maintaining concentration, persistence or pace at Step Three of the sequential evaluation process.   (Tr. 12). In assessing plaintiff's RFC, the ALJ found that plaintiff has the mental capacity to understand, remember, and follow simple instructions; perform simple, routine, repetitive, concrete, and tangible tasks; and "sustain the attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence."   (Tr. 13).

     Plaintiff contends the ALJ failed to adequately account for plaintiff's moderate impairment in maintaining concentration, persistence or pace in formulating plaintiff's RFC because the RFC accounts for only the "level of intensity" of the work by limiting plaintiff to "simple, routine, repetitive, concrete, [and] tangible tasks," but fails to account for the frequency with which plaintiff is capable of concentrating at work tasks.   Plaintiff concedes the RFC sufficiently provides for pace-based restrictions, but she contends that without an explanation as to the frequency plaintiff is capable of concentrating, the ALJ's RFC is not supported by substantial evidence.   (Doc. 16 at 12, citing *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842, 846 (E.D. Mich. 2007) ("[T]here seem to be two components to having moderate problems in concentration.   One deals with the frequency of how often one cannot concentrate.   The other deals with the level of sophistication or intensity of the work that can be done with the concentration limitation.").   Plaintiff contends that the ALJ committed reversible error by then

6

relying on a hypothetical question to the VE which failed to describe all of plaintiff's limitations of function. (Doc. 16 at 11, citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010)).

The Commissioner argues that the ALJ's RFC adequately addresses plaintiff's moderate restrictions in concentration, persistence, or pace. The Commissioner asserts that the Sixth Circuit has recognized that the terms "simple, routine, repetitive" address limitations in concentration and/or attention, but not necessarily "pace," which is not at issue in this case. (Doc. 17 at 5, citing *Ealy*, 594 F.3d at 516-17).

Concentration, persistence, or pace refers to the ability of a claimant to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00C3. By limiting plaintiff to simple, routine, repetitive, concrete and tangible tasks at a reasonable pace and persistence, the ALJ reasonably accommodated plaintiff's moderate limitations in concentration. *Ealy*, the case upon which plaintiff relies, is distinguishable from the instant case. In *Ealy*, the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d at 516. The ALJ adopted the doctor's opinion and specific limitations, but then streamlined the hypothetical question to include only a limitation to "simple repetitive tasks and instructions in nonpublic work settings" and omitted the two-hour pace-based restriction. *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have. *Cf. Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014)

7

(limitation to simple, routine, and repetitive tasks adequately conveyed plaintiff's moderately-limited ability "to maintain attention and concentration for extended periods" where physician did not place any concrete functional limitations on plaintiff's ability to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks).

Here, plaintiff does not identify evidence showing any specific, concrete restrictions relating to her ability to attend or concentrate, as found in *Ealy*. Without further explanation by plaintiff or citation to evidence to support her argument that the RFC does not accommodate her moderate limitations in concentration and persistence, the Court cannot conclude that the ALJ's RFC assessment was erroneous.

### 2. Whether the ALJ erred by not finding depression to be a severe impairment.

Plaintiff has a history of depression for which she was treated with Effexor and Cymbalta. (Tr. 260, 262, 324, 325, 330, 400, 403, 409, 410, 411, 417).

In February 2012, consulting psychologist Dr. Jillian Yee, Psy.D., evaluated plaintiff for disability purposes. (Tr. 347-50). Plaintiff reported that she had been in therapy approximately twelve years ago for anxiety and depression. She reported that she has been dealing with depression "on and off for years, and then you have the cancer and it has gotten worse. I don't want to be around people and I don't want to get out of bed. I cry for no reason. I argue with my husband just to be alone so people stay away." (Tr. 347). Dr. Yee reported that plaintiff does not socialize, tends to isolate herself, and does not get out that much. Dr. Yee noted that plaintiff put forth a normal level of effort during the cognitive testing. Plaintiff was also observed to be sobbing throughout the examination, and she exhibited a sad affect. (Tr. 348). Dr. Yee opined that plaintiff appeared to have trouble interacting socially; she became anxious

8

around new people; she would have difficulty controlling her irritability around others; and she exhibited difficulty maintaining attention and concentration throughout the examination and needed to have questions repeated to her. Dr. Yee opined that working in an environment with the public would be difficult and plaintiff's "level of persistence may be negatively impacted by pessimism, fatigue, low motivation, anxiety, and physical health issues." (Tr. 349). Dr. Yee diagnosed plaintiff with a major depressive disorder, recurrent and of moderate severity, and an anxiety disorder. (*Id.*).

Plaintiff received mental health treatment at Centerstone from May 8, 2012, until at least January 29, 2013. (Tr. 420-37). Initially, plaintiff presented on referral from her primary care physician for treatment of a number of emotional and psychological issues, including excessive crying, isolating tendencies, sleep deprivation, and feelings of distrust. (Tr. 421). Plaintiff displayed "extreme distress" when asked about her prior abuse history and reported she was currently dealing with marital issues and emotional abuse at home. (*Id.*). The intake social worker, Carolyn Childress, MSW, found plaintiff suffered from major depressive disorder, recurrent, unspecified, panic disorder without agoraphobia, partner relational problems, generalized anxiety disorder and post-traumatic stress disorder (PTSD), chronic. (Tr. 424).

On March 22, 2013, Ms. Childress completed a medical assessment of plaintiff's ability to do work related activities. (Tr. 547-49). Ms. Childress found plaintiff was markedly limited in her ability to behave in an emotionally stable state, relate predictably in a social situation, and deal with the public. (Tr. 547-48). Ms. Childress found plaintiff was extremely limited in her

9

ability to deal with work stress.   (Tr. 547).   Ms. Childress opined that stress perpetuated plaintiff's symptoms of anxiety and panic attacks and that her mood disorder markedly impaired her personal and social functioning.   (Tr. 548).

The ALJ determined that plaintiff has one severe mental impairment only: an anxiety disorder.   The ALJ did not characterize plaintiff's depression as a severe or nonsevere impairment.   Rather, the ALJ failed to even acknowledge that depression was a medically determinable impairment.   Plaintiff contends the ALJ's failure to acknowledge plaintiff's impairment of major depressive disorder warrants remand of this matter for further proceedings.

The ALJ erred by not finding plaintiff's major depressive order to be a severe impairment.   An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience."   *Farris v. Sec. of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).   *See also Rogers*, 486 F.3d at 243 n.2.   The record as a whole, including the evidence from Dr. Yee and Ms. Childress, supports the conclusion that plaintiff's major depressive disorder is more than a "slight abnormality" having more than a "minimal effect" on her work abilities.   *Farris*, 773 F.2d at 90.

The Commissioner concedes that the ALJ's decision "lacks explicitly [an] explanation for [p]laintiff's depression at step two."   (Doc. 17 at 5).   Nevertheless, the Commissioner contends this error is harmless and does not warrant remand.   (Doc. 17 at 5-7).   The Commissioner asserts the ALJ's failure to find that plaintiff has an additional severe impairment is harmless error under *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240 (6th Cir. 1987), because the ALJ considered

10

the record as a whole in formulating plaintiff's RFC. The Commissioner further contends that regardless of whether the ALJ labeled depression as a severe impairment, the salient issue is whether the ALJ considered the functional limitations from plaintiff's mental impairments.

The Commissioner's arguments are unpersuasive. *Maziarz* stands for the proposition that where an ALJ considers all of a claimant's impairments (both severe and nonsevere) in determining the claimant's RFC, the ALJ's failure to characterize certain impairments as "severe" at Step Two of the sequential evaluation process is legally irrelevant and constitutes harmless error. *Id.* at 244. In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in Step Two of her analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining her residual functional capacity. *Id.*

*Maziarz* is distinguishable from this case because the ALJ's decision does not reflect any consideration of plaintiff's depression at any step of the sequential evaluation process. The ALJ did not even acknowledge depression as a medically determinable impairment in the first instance. The ALJ's decision does not discuss Dr. Yee and Ms. Childress's assessments of a major depressive disorder. Nor does the ALJ's decision reflect that she considered any limitations from plaintiff's major depressive disorder in formulating her RFC. *Cf. Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007) (where ALJ specifically accounted for plaintiff's coronary artery disease and diabetes in assessing RFC, ALJ's failure to classify both as severe impairments was harmless error). The ALJ's decision omits any discussion of plaintiff's depressive disorder and the Court cannot discern whether the ALJ ignored, rejected, or merely

11

evidence of plaintiff's depression. *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.")). Without any discussion of plaintiff's major depressive disorder in the ALJ's decision, the Court cannot conclude that the ALJ considered plaintiff's depression in assessing her RFC such that the failure to characterize this impairment as "severe" or "nonsevere" at Step Two is harmless error. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").[4] Because it is not this Court's role to reweigh the evidence, this matter should be remanded to the ALJ to specifically address plaintiff's major depressive disorder and plaintiff's limitations therefrom.

### 3. Whether the ALJ erred in weighing the medical opinions of record.

#### a. Regulatory standards

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. §

---

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id*. (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement applies only to treating sources. *Id*. at 876. The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy*, 594 F.3d at 514. *See also Smith,* 482 F.3d at 875. When deciding the weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion

13

considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources.  *Id*.

The ALJ must consider all available evidence in an individual's case record, including evidence from medical sources.  Soc. Sec. Ruling 06-03p, 2006 WL 2329939.  The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources."  *Id*. (citing 20 C.F.R. §§ 404.1502, 416.902).  Licensed physicians and licensed or certified psychologists are "acceptable medical sources."  *Id*. (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)).  Only "acceptable medical sources" as defined under 20 C.F.R. §§ 404.1513(a), 416.913(a) can provide evidence establishing the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id*.

Mental health social workers are not "acceptable medical sources" and instead fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's ability to function.  Soc. Sec. Ruling 06-03p, 2006 WL 2329939.  It may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  *Id*.  Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source

14

explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id. See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. Soc. Sec. Ruling 06-03p, 2006 WL 2329939. The ALJ "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id*. at *6 (emphasis added).

### b. Mental health impairments

In evaluating the mental health opinion evidence, the ALJ did not specifically weigh the opinions of the state agency non-examining psychologists but found "[o]verall, their findings are consistent with the totality of the evidence." (Tr. 17). The ALJ gave "weight" to Dr. Yee's opinion because the consultative psychological examiner's opinion was "consistent with the claimant's subjective reports and mental health records," including Dr. Childress's intake and progress notes. (Tr. 17, citing Tr. 420-436). The ALJ gave "no weight" to plaintiff's treating social worker, Ms. Childress. (Tr. 18). There was no opinion from a treating psychologist or psychiatrist.

Plaintiff contends the ALJ erred by failing to accord a specific amount of weight to Dr. Yee's opinion in accordance with 20 C.F.R. § 404.1527(e)(2)(ii).[5] Plaintiff argues that without specifying the weight given to Dr. Yee's opinion, it is impossible to discern the role Dr. Yee's opinion played in the ALJ's development of plaintiff's RFC. (Doc. 16 at 9-10).

The Commissioner contends that 20 C.F.R. § 404.1527(e)(2)(ii) does not apply to Dr.

---

[5] Section 404.1527(e)(2)(ii) provides that when an ALJ considers the findings of a state agency medical or psychological consultant, the ALJ will evaluate the findings using the relevant factors in 20 C.F.R. §

15

Yee, who is a one-time examining source.   The Commissioner also contends that Dr. Yee did

not provide an opinion on work-related limitations and therefore the ALJ was not required to

weigh the report as "opinion evidence."   (Doc. 17 at 8).

Initially, and contrary to the Commissioner's argument, Dr. Yee's narrative report in fact

specified certain work-related limitations stemming from plaintiff's major depressive disorder

and anxiety disorder.   Under the heading "Medical Source Statement,"[6] Dr. Yee opined that

plaintiff:

> appears to have trouble interacting socially.   She gets anxious around new people
> and she also appears to have difficulty controlling her irritability when she is
> around people.   Working in an environment with the public would be difficult.
> She had a difficult time attending and concentrating throughout the examination.
> She needed questions repeated to her.   Her level of persistence may be negatively
> impacted by pessimism, fatigue, low motivation, anxiety, and physical health
> issues.

(Tr. 349).   These are precisely the limitations that the ALJ must weigh in determining plaintiff's

RFC.   *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *5 ("A medical source's statement

about what an individual can still do is medical opinion evidence that an adjudicator must

consider together with all of the other relevant evidence (including other medical source

statements that may be in the case record) when assessing an individual's RFC.").

Although the Commissioner is correct that 20 C.F.R. § 404.1527(e)(2)(ii) applies to

non-examining sources, and not examining sources like Dr. Yee, the regulations do in fact

require the ALJ to weigh medical opinions regardless of their source in accordance with the

---

404.1527(a)-(d).

[6] "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *4.   *See also* 20 C.F.R. § 404.1513(b)(6) (a "medical source statement" is a "statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on [] factors" such as medical history, clinical findings, laboratory findings, diagnosis, and

factors set forth in the regulations. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight under §§ 404.1527(c)(2), 416.927(c)(2), all of the factors listed in these regulations should be considered in determining the weight to give a medical source opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These include the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). By assigning "weight" to Dr. Yee's opinion without specifying the degree of weight, the Court is unable to discern how the ALJ evaluated Dr. Yee's opinion on plaintiff's functionality. The ALJ erred in weighing the opinion of this medical source in accordance with the Commissioner's own regulations.

The Commissioner suggests that any error in this regard is harmless because the state agency psychologists reviewed Dr. Yee's report and gave an opinion on plaintiff's functionality, which the ALJ stated was "consistent with the totality of the evidence." (Doc. 17, citing Tr. 17 and 361). There are two problems with this argument. First, the ALJ did not weigh the state agency reviewers' opinions in accordance with the regulations. Rather, the ALJ simply stated that these reviewing psychologists "have program knowledge," are "unbiased," and "their findings are consistent with the totality of the evidence." (Tr. 17). The ALJ did not state whether these opinions were given any weight or explain how they were supposedly consistent with the record evidence.

Second, the state agency reviewers' opinions were not based on all of the record evidence. The ALJ failed to acknowledge that the non-examining medical consultants lacked for their review a significant portion of the medical and other records in this case, including Ms.

---

treatment prescribed with response and prognosis."). 17

Childress's treatment records, when they rendered their opinions.   One of the factors an ALJ

considers in weighing medical opinions is "the extent to which an acceptable medical source is

familiar with the other information in [the] case record."   20 C.F.R. §§ 404.1527(c)(6),

416.927(c)(6).   A state agency reviewing source's opinion may be entitled to greater weight than

that of a treating or examining source in certain circumstances, such as when the "State agency

medical . . . consultant's opinion is based on a review of a complete case record that . . . provides

more detailed and comprehensive information than what was available to the individual's

treating source." *Blakley*, 581 F.3d at 409 (quoting SSR 96-6p, 1996 WL 374180, at *3).

However, where a non-examining source has not reviewed a significant portion of the record and

the ALJ fails to indicate that he has "at least considered [that] fact before giving greater weight"

to the reviewing doctor's opinion, the ALJ's decision cannot stand.   *Blakley*, 581 F.3d at 409

(internal quotation omitted).   In this case, the later-generated treatment notes, observations, and

opinions of Ms. Childress contain a more detailed picture of plaintiff's functionality than any

other record evidence that was considered by the non-examining psychologists.   The state

agency psychologists did not examine this evidence prior to proffering their opinions, making

their opinions incomplete.

    This error is compounded by the ALJ's assessment of Ms. Childress's opinion, which the

ALJ gave "no weight."   As a mental health social worker, Ms. Childress is considered an "other

[non-medical] source."   *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).   The Sixth Circuit has held

that an ALJ has discretion to determine the proper weight to accord opinions from "other

sources" such as a social worker.   *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530

(6th Cir. 1997).   However, a more recent Social Security Ruling clarifies how to consider

opinions and other evidence from sources who are not "acceptable medical sources."   Soc. Sec.

Ruling 06-03p, 2006 WL 2329939.   While the ruling notes that information from "other

sources" cannot establish the existence of a medically determinable impairment, the information

"may provide insight into the severity of the impairment(s) and how it affects the individual's

ability to function."   *Id.* at *2.   The ruling goes on to note that:

> With the growth of managed health care in recent years and the emphasis on
> containing medical costs, medical sources who are not "acceptable medical
> sources," such as . . . licensed clinical social workers have increasingly assumed a
> greater percentage of the treatment and evaluation functions handled primarily by
> physicians and psychologists.  Opinions from these medical sources who are not
> technically deemed "acceptable medical sources," under our rules, are important
> and should be evaluated on key issues such as impairment severity and functional
> effects, along with the other evidence in the file.

*Id.* at *3 (emphasis added).[7]   In addition, opinions from non-medical sources who have seen the

claimant in their professional capacity should be evaluated by using the applicable regulatory

factors, including how consistent the opinion is with other evidence and how well the source

explains the opinion.   *Id.* at *4.

The ALJ gave Ms. Childress's opinion "no weight" because she is not an acceptable

medical source; she based her opinion on less than five visits with plaintiff; her assessment was

based solely on plaintiff's subjective complaints, rather than objective findings; and she failed to

discuss specific instances or clinical evidence to support her opinions of extreme and marked

limitations.   (Tr. 18).

The ALJ's explanation fails to provide a proper basis for rejecting Ms. Childress's

---

[7] The Sixth Circuit has recognized that "many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such [individuals].   The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care."   *Cole v. Astrue*, 661 F.3d 931, 939 n. 4 (6th Cir. 2011).

19

findings as required by Soc. Sec. Ruling 06-03p.   Although Ms. Childress is considered an

"other source" and not an "acceptable medical source," she did have the most extensive treating

relationship with plaintiff and thus a deeper insight into plaintiff's major depressive disorder,

anxiety disorder, and other mental impairments.   In addition, the ALJ gave "no weight" to Ms.

Childress's opinion because it was based largely on plaintiff's subjective reports.   However, "a

psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing

as a medical impairment" and "consequently, the diagnostic techniques employed in the field of

psychiatry may be somewhat less tangible than those in the field of medicine. . . .   [W]hen

mental illness is the basis of a disability claim, clinical and laboratory data may consist of the

diagnosis and observations of professionals trained in the field of psychopathology."   *Brooks v.*

*Comm'r of Soc. Sec.*, 531 F. App'x 636, 643-44 (6th Cir. 2013) (quoting *Blankenship v. Bowen*,

874 F.2d 1116, 1121 (6th Cir. 1989)).   In the context of mental health treatment, it is often the

case that psychological professionals are required to rely primarily on the statements of patients

in forming their diagnoses and opinions; such "talk therapy" is the underpinning of psychiatric

treatment and therapists may rely on subjective complaints elicited from patients during clinical

interviews in formulating their medical opinions on functional limitations.   *See Warford v.*

*Astrue*, No. 09–52, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (citing *Blankenship*, 874

F.2d at 1121).   The fact that Ms. Childress relied on plaintiffs self-reports in formulating her

opinion is not an adequate basis for the ALJ to reject the opinion.

   Moreover, and contrary to the ALJ's decision, Ms. Childress's intake and progress notes

in fact discuss specific instances and clinical evidence which support plaintiff's inability to deal

with stress and the public.   On intake, Ms. Childress noted that plaintiff "displays high anxiety

characterized by excessive worry and stress.  Client will grasp her head with both hands and talk herself out of a panic attack."  (Tr. 421).  She also observed that plaintiff began "to scratch at her arms producing bleeding during intake, reports that she picks at herself when she becomes nervous or feeling anxious.  Client displayed extreme distress when asked about prior abuse history, began to clasp her head, saying 'no, no, no, stop,'" noting that plaintiff suffered sexual abuse as a child by a close relative and domestic violence in her previous marriage.  (*Id.*).  The Adult Needs and Strengths Assessment rated plaintiff's depression and anxiety as "severe," indicated plaintiff was unable to regulate her affect, and indicated she experienced repeated and severe intrusive thoughts of trauma.  (Tr. 426-27).  Subsequent treatment records noted hypervigilance, excessive or constant worry, feeling stressed, persistent sadness, hopelessness, racing heart, hyperventilation, need to escape, and marital discord.  (Tr. 430).  On another occasion, Ms. Childress reported that plaintiff "continues to display symptoms of high anxiety as evidenced by constant worrying, sleeping problems, becomes easily agitated and has low threshold for frustration."  (Tr. 430).  Plaintiff continued to have panic attacks and intrusive thoughts stemming from prior sexual abuse and domestic violence.  (*Id.*).  She displayed similar symptoms during another visit, where Ms. Childress noted "persistent crying jags, low self-esteem, lack of confidence in decision-making, isolation, excessive worry, poor sleep, hyper-vigilance in the public setting, distrust, racing heart accompanied with inability to breathe, can become over-heated when feeling anxious, [and] has a low threshold of managing stressful situations."  (Tr. 430-31).

The Court is unable to discern how the ALJ arrived at her RFC finding given her failure to specify the weight given to Dr. Yee and the psychological consultants.  The evidence from Dr.

Yee and Ms. Childress, when viewed together, appears to indicate plaintiff's limitations are more

restrictive than those found by the ALJ. Because the ALJ failed to account for plaintiff's major

depressive disorder, improperly weighed the medical evidence, and failed to give sufficient

justification for rejecting Ms. Childress's findings, this matter should be remanded for further

fact finding, including the reevaluation of the weight given to the mental health sources of record

and plaintiff's RFC.

### c. Physical impairments

Plaintiff treated with rheumatologist Dr. Candice Flaugher, D.O., from March 2011 until

at least February 2013. (Tr. 274-77, 299-319, 389-93, 515-45). Dr. Flaugher's clinical notes

reveal that plaintiff exhibited back pain, joint swelling, decreased mobility, myalgia, crepitus in

both of her knees, pain in her right elbow, and 18/18 tender points. (*Id.*). Dr. Flaugher's

diagnoses included rheumatism and fibrositis, osteoarthritis of more than one site, and a history

of breast cancer. (*Id.*).

Plaintiff treated with pain specialist Dr. Brahmbhatt in October 2011 and January 2012.

(Tr. 272-73, 336-39). Dr. Brahmbhatt's examination findings included tenderness over

plaintiff's lumbar spine and lumbosacral junction and generally restricted and painful range of

motion. Dr. Brahmbhatt assessed lumbosacral spondylosis without myelopathy, degeneration of

lumbar or lumbosacral intervertebral disc, and unspecified arthropathy involving other specified

sites. (*Id.*). Dr. Brahmbhatt ordered an MRI of plaintiff's lumbar spine. The MRI taken on

November 2, 2011, revealed degenerative disc disease. (Tr. 289-90). In January 2012, Dr.

Brahmbhatt noted that plaintiff's chronic pain has failed to improve with physical therapy,

conservative treatments, medications and spinal injections. Dr. Brahmbhatt recommended

plaintiff consult with a spine surgeon for a surgical opinion, but she decided against surgical consultation and wanted to continue with pain medication.  (Tr. 337).

Dr. Kurt Jacobs, D.O., examined plaintiff for disability purposes on February 25, 2012. (Tr. 352-57).  Plaintiff rated her pain severity at a level of 8 on a 0-10 visual analog scale.  (Tr. 352).  She also reported she had difficulty washing, dressing and doing chores.  (*Id.*).  Dr. Jacobs noted that plaintiff's gait was abnormal and she exhibited signs of fatigue after only minimal exertion.  (Tr. 353).  Plaintiff exhibited abnormal speed, stability and straight leg raise, and she was not able to walk on heels or toes, tandem walk, or squat.  (Tr. 354).  Dr. Jacobs found a limited range of motion in plaintiff's cervical and lumbar spines, shoulders, and knees. (Tr. 357).  Dr. Jacobs assessed plaintiff as suffering from back and neck pain secondary to disc disease, arthritis, and fibromyalgia which "will probably not improve with time."  (Tr. 354). Dr. Jacobs opined that plaintiff was limited to sitting and standing for 30-45 minutes, walking 200 feet, and lifting up to 10 pounds, and she would experience difficulty handling objects.  (Tr. 354-55).

After reviewing the record in February 2012, state agency physician Dr. J.V. Corcoran, M.D., opined that plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit about six hours in an eight-hour work day; and stand and/or walk about six hours in an eight-hour work day.  (Tr. 378).  Dr. Corcoran also found that plaintiff could occasionally climb ramps/stairs, climb ladders/rope/scaffolds, balance, stoop, kneel, crawl and crouch.  (Tr. 379).  Dr. Corcoran found plaintiff should avoid concentrated exposure to wetness, i.e., avoid slippery or uneven surfaces and hazards such as machinery and heights.  (Tr. 381). Dr. Corcoran found plaintiff was only partially credible, noting the severity of her symptoms are

not reflective of the record.   Plaintiff exhibited no issues walking at her mental consultative examination or any recent examination other than with Dr. Jacobs.   (Tr. 382).   Dr. Corcoran assigned Dr. Jacobs opinion "other weight."   (Tr. 383).

State agency physician J. Eskonen, D.O., reviewed the record on reconsideration in April 2012.   Dr. Eskonen affirmed Dr. Corcoran's assessment of plaintiff's exertional limitations. (Tr. 395).

The ALJ essentially adopted the physical RFC assessment of the state agency medical consultants, who opined plaintiff could perform light work with restrictions, because the non-examiners "are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act."   (Tr. 17).   The ALJ gave "little weight" to the consultative examiner, Dr. Jacobs, who opined that plaintiff was limited to sitting and standing for 30 to 45 minutes and to walking 200 feet because the assessment was inconsistent with his clinical findings and was based heavily on plaintiff's subjective complaints rather than objective evidence.

Plaintiff contends the ALJ failed to properly weigh these opinions under the regulations and erroneously relied on the opinions of the state agency consultants because they were not privy to a substantial portion of the medical record.   Plaintiff also contends that Dr. Jacobs' opinion is supported by the records of treating rheumatologist Dr. Flaugher and pain physician Dr. Brahmbhatt.

The Commissioner contends the ALJ reasonably discounted Dr. Jacobs' opinion because it was inconsistent with his own examination and other evidence.   The Commissioner also argues a state agency medical consultant's opinion can outweigh the opinion of a one-time

examining source.

This is not a case where the non-examining, reviewing physicians' opinions are based on a review of the complete case record.  *Blakley*, 581 F.3d at 409.  *See also Brooks*, 531 F. App'x at 642.  As explained by the *Brooks* Court, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment, we generally require some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record."  *Id.* (internal quotation marks and citations omitted).  Here, the state agency reviewers did not have the opportunity to review the entire medical record and they lacked the benefit of the medical notes and records from plaintiff's treating rheumatologist and the Wayne County Health Department created after their opinions were given.  This is a significant portion of plaintiff's medical history which also constituted on-going medical treatment.  In addition, the ALJ did not analyze the medical evidence in adopting the opinions of the non-examining state agency consultants.  Nor did the ALJ assign any specific weight to the opinions.  The only reason the ALJ gave for crediting the limitations set forth by the state agency consultants was the expertise of the physicians, in general, in Social Security disability matters.  (Tr. 17).  Without a more in-depth explanation of the reasons underlying her decision to credit the state agency physicians' opinions, the ALJ's decision is without substantial support in the record.

As for giving "little weight" to the opinion of Dr. Jacobs, the consultative examiner, the ALJ focused on the "normal" clinical findings and objective evidence that the ALJ believed were inconsistent with Dr. Jacobs' functional assessment.  "However, in light of the unique

evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers*, 486 F.3d at 245 (citing *Preston v. Sec'y HHS*, 854 F.2d 815, 820 (6th Cir. 1988)). By focusing on the lack of objective medical data in assessing Dr. Jacobs' opinion and, by extension, plaintiff's RFC, the ALJ failed to evaluate plaintiff's fibromyalgia in accordance with Sixth Circuit precedent. Fibromyalgia is a condition that "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston*, 854 F.2d at 817-820.[8] In the context of social security disability cases, fibromyalgia presents particularly challenging issues in determining credibility, RFC, and disability because its symptoms are entirely subjective. *See Rogers*, 486 F.3d at 243 n. 3. Standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston*, 854 F.2d at 820. *See also Rogers*, 486 F.3d at 243-44.

It is undisputed that plaintiff suffers from fibromyalgia. The ALJ made a factual finding at Step Two of the sequential evaluation process that plaintiff's fibromyalgia is a severe impairment under the Social Security regulations. (Tr. 10, Finding # 3). Once the ALJ made a factual finding that plaintiff suffers from the severe impairment of fibromyalgia, it was incumbent upon the ALJ to apply the correct legal standard for evaluating this impairment rather than discount the opinion of the consultative examiner based on the lack of "objective" evidence. The ALJ's decision in this regard is not supported by substantial evidence and this matter should be remanded for reevaluation of plaintiff's fibromyalgia impairment and the weight to be given

---

[8] In *Preston*, the term "fibrositis" was used instead of "fibromyalgia." Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis. *See* Merck Manual Online, http://www.merckmanuals.com/home/bone-joint-and-muscle- disorders/muscle-bursa-and-tendon-disorders/fibromyalgia (last visited August 7, 2015).

the medical opinions of record.

It is not necessary to address plaintiff's final argument that the ALJ erroneously discredited plaintiff's reports of her activities of daily living because the ALJ's reconsideration of this matter on remand may impact the remainder of the ALJ's sequential analysis, including the assessment of plaintiff's credibility. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if this assignment of error had merit, the result would be the same, i.e., a remand for further proceedings and not outright reversal for benefits.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical and other opinion evidence in accordance with this decision; to reconsider plaintiff's credibility and RFC; and to further develop the medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: __8/11/15__

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RHONDA L. MAYS,
   Plaintiff,

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.

Case No. 1:14-cv-647
Dlott, J.
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).